UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | Crim. No. 3:15-cr-29 (JBA) |
|---|---|
| v. | |
| KARL ROYE | July 27, 2016 |

**RULING ON MOTION IN LIMINE [DOC. # 154] TO PRECLUDE EDWIN CARTER'S TESTIMONY RE WEAPONS AT KARL ROYE'S HOUSE**

Defendant Karl Roye moves [Doc. # 154] in limine to preclude Edwin Carter from testifying about two weapons he saw in a bag at Defendant's home the day of Anthony Parker's murder. On July 21, 2016, the Court provisionally granted [Doc. # 157] this motion, but permitted the parties to file supplemental briefing on the subject. Having considered the Government's supplemental briefing and oral argument from both parties on the record on July 26, 2016, for the following reasons, the Court vacates its prior provisional ruling and denies Defendant's motion.

**I. Discussion**

Defendant contends that Mr. Carter should be precluded, pursuant to Federal Rule of Evidence 701(c), from testifying that the guns he viewed were semi-automatic, 0.9 mm weapons because such testimony is based on specialized knowledge. Under Rule 701:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> **(a)** rationally based on the witness's perception;
> **(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> **(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.[1]

---

[1] Rule 702, in turn, provides:
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

As the Notes to the Rule explain, subsection (c) was added in 2000 to: (1) "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing"; and (2) "ensure[] that a party will not evade the expert witness disclosure requirements . . . by simply calling an expert witness in the guise of a layperson." Fed. R. Evid. 701(c) advisory committee's note to 2000 amendments. "The amendment is not intended to affect the prototypical examples of the type of evidence contemplated by the adoption of Rule 701 relating to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distances, and an endless number of items that cannot be described factually in words apart from inferences." *Id.* (internal quotation marks omitted). Thus, the Notes continue, "courts have permitted lay witnesses to testify that a substance appeared to be a narcotic, so long as a foundation of familiarity with the substance is established." *Id.* (citing *United States v. Westbrook*, 896 F.2d 330 (8th Cir. 1990). "Such testimony is not based on specialized knowledge within the scope of Rule 702, but rather is based upon a layperson's personal knowledge." *Id.* "If, however, that witness were to describe how a narcotic was manufactured, or to describe the intricate workings of a narcotic distribution network, then the witness would have to qualify as an expert under Rule 702." *Id.* (citing *United States v. Figueroa-Lopez*, 125 F.3d 1241 (9th Cir. 1997)).

---

    **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
    **(b)** the testimony is based on sufficient facts or data;
    **(c)** the testimony is the product of reliable principles and methods; and
    **(d)** the expert has reliably applied the principles and methods to the facts of the case.

The Second Circuit has added that in considering subsection (c), "a court must focus on the reasoning process by which a witness reached his proffered opinion." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2015). "If the opinion rests in any way upon scientific, technical, or other specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701." *Id.* (internal quotation marks omitted); *see also United States v. Yanotti*, 541 F.3d 112, 126 (2d Cir. 2008) ("While we do not find that loansharking is an activity about which the average person has knowledge, we find that the opinion DiDonato reached from his own loansharking experience derived from a reasoning process familiar to average persons. In short, his opinion did not depend on the sort of specialized training that scientific witnesses or statisticians rely upon when interpreting the results of their own experiments or investigations.") Put another way, a court must ask why the testimony is sought to be admitted: "because it is impractical to verbalize the primary data such as the witness's personal experience (the rationale for lay opinion) or because the witness has a technique or method for drawing a more reliable inference from the primary data (the rationale for expert opinion)?" *McCormick On Evidence* § 11 (7th ed. 2016).

Thus, in *Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171 (2004), the Second Circuit held that a lay witness could testify about "the investigation he undertook in his role as a Bank of China employee" because such testimony "was based on his perceptions," even though he had specialized knowledge. *Id.* at 181. However, "to the extent [the witness's] testimony was not a product of his investigation, but rather reflected specialized knowledge he has because of his extensive experience in international banking, its admission pursuant to Rule 702 was error." *Id.* at 182. Therefore, the court concluded, the witness's "explanations regarding typical international banking transactions or definitions of banking terms, and any conclusions that he made that were not a result of his investigation, were improperly admitted." *Id.*

Similarly in *DVL, Inc. v. Niagara Mohawk Power Corp.*, 490 F. App'x 378 (2d Cir. 2012), the Second Circuit held that a lay witness's "conclusion that the flow of water from GE's manufacturing plant to the DVL Site 'would have inevitably caused the migration of PCB contamination to the present DVL Site,'" was improper because it "could not have been based on the reasoning processes familiar to the average person in everyday life, since ordinary lay persons would have no knowledge of the conditions under which chemical contamination of soil can migrate from site to site." *Id.* at 381 (internal quotation marks and citations omitted); *see also United States v. Haynes*, 729 F.3d 178, 195 (2d Cir. 2013) (holding that a law enforcement officer's testimony was improperly admitted as lay testimony because he "did more than simply describe what he found in the gas tank and what he perceived. He described how the float on the outside of the gas tank worked and why the gas gauge would have registered zero to empty while the drugs were in the gas tank," knowledge he acquired "though his experience as a border agent inspecting vehicles, not through the reasoning processes of the average person.").

Particularly relevant here, the Second Circuit recently held (albeit in a summary order) that a lay witness could properly testify "that he saw the defendant with what appeared to him to be a '22 long rifle target pistol.'" *United States v. Thornhill*, No. 15-2147, 2016 WL 3569893, at *1 (Jun. 30, 2016). The court reasoned, "[t]he witness testified that he recognized the gun based on his previous work as a regiment weapons officer," and because his "testimony was based on his personal observations informed by his personal life experiences, it was appropriate lay testimony and did not require qualification under Rule 702." *Id.*; *see also United States v. Houston*, 813 F.3d 282, 292 (6th Cir. 2016) ("[T]he district court did not abuse its discretion when it permitted Dobbs to identify firearms in the video based on his general familiarity with firearms and the Ruger Mini 14 in particular. Just as Dobbs was more likely to be able to identify Houston in the poor quality

4

videos due to his familiarity with Houston, Dobbs' general familiarity with firearms and the Ruger Mini 14 (which likely exceed that of the average juror) also made him more likely to be able to identify firearms in the video."); *cf. United States v. Durham*, 464 F.3d 976 (9th Cir. 2006) (permitting lay witness testimony "that the burnt residue smoke by Michala was, in fact, marijuana" because the witness was familiar with marijuana and her "testimony was thus based upon her personal knowledge, and her first-hand, multisensory interaction with the substance in question: [she] viewed the contents of the water pipe used by Michala, and [she] then smoked from the pipe, which afforded her the opportunity to smell, taste, and experience the effects of its contents."); *United States v. Espino*, 317 F.3d 788 (8th Cir. 2003) (allowing lay witness testimony that based on the witness's experience, a particular volume of drugs "generally constituted a certain weight of the drug" because such testimony was "based upon [the witness's] experience" and the witness was "not attempting to explain any technical or specialized information").

      Likewise here, because he relies on a "reasoning process familiar to average persons" and his own experience and first-hand observations, *Yanotti*, 541 F.3d at 126, Mr. Carter may testify that the gun he saw was a 0.9 mm semi-automatic, as long as the Government first lays the proper foundation that (1) Mr. Carter has enough experience to be able to identify the type of gun he saw and (2) he was able to see the gun well enough to be able to rationally draw a conclusion about what type or model gun it was. In order to ensure that the Government can lay such a foundation, the Government's proffer will be heard during a recess of the trial, before Mr. Carter testifies, of the circumstances that show that Mr. Carter's observation of the firearms in the bag was sufficient

for him to rationally conclude the type/model of guns he believes he saw without removing the guns from the bag.[2]

## II. Conclusion

For the foregoing reasons, the Court's Order [Doc. # 157, ¶ 8] provisionally granting Defendant's Motion in Limine to Preclude Edwin Carter from Testifying re Weapon is VACATED, and Defendant's motion is DENIED, on the assumption that the Government's proffer will demonstrate a proper foundation that Mr. Carter saw the gun well enough to be able to rationally draw a conclusion about what type of gun it was.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 27th day of July 2016.

---

[2] Because Defendant does not dispute Mr. Carter's experience with guns, this proffer will be limited to Mr. Carter's personal observations upon which he based his conclusion regarding the type/model of gun he saw.

6