UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>KARL ROYE | Crim. No. 3:15-cr-29 (JBA)<br><br>August 4, 2016 |

**RULING ON GOVERNMENT'S MOTION TO ADMIT EVIDENCE OF PRIOR CONSISTENT STATEMENTS**

During trial on August 3, 2016, the Government sought to admit, as prior consistent statements under Federal Rule of Evidence 801(d)(1)(B), recordings of a conversation between co-Defendant Jimel Frank and witness Anthony Owens made on November 13, 2014, while Mr. Owens was wearing a recording device for law enforcement. The Court ruled in open court that the majority of the statements the Government sought to admit were not admissible as prior consistent statements. The Government now seeks [Doc. # 181] reconsideration of the Court's ruling with respect to one segment of the recording. For the following reasons, the Government's motion is denied.

I.      **Applicable Law**

Under Federal Rule of Evidence 801(d)(1)(B), a statement is not hearsay if "[t]he declarant testifies and is subject to cross-examination about a prior statement, and the statement" "is consistent with the declarant's testimony and is offered: (i) to rebut an express or implied charge that the declarant recently fabricated it or acted from recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground."

A number of criteria must be met for a statement to be admitted as a prior consistent statement under 801(d)(1)(B). First, the statement must be a "statement," as that term is defined by the Federal Rules of Evidence: "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a). Second, the statement offered must be consistent with a statement made by the declarant at trial.[1]

Additionally, under subsection (i), the opposing party must have alleged that the declarant fabricated a particular part of his testimony or testified based on an improper influence or motive; the offered statement must have been made prior to the existence of that improper influence or motive, *see Tome v. United States*, 513 U.S. 150, 160 (1995); and the offered statement must pertain to the particular part of the testimony that was challenged, *see id.* at 157–58.

Similarly, under subsection (ii), the declarant's credibility must have been attacked on some particular ground on cross-examination; and the offered prior consistent statement must serve to rehabilitate the witness's credibility on the same ground upon which the witness's credibility was attacked. *See* 1 McCormick On Evid. § 47 (7th ed.) ("The general test of admissibility is whether evidence of the witness's . . . consistent statements is logically relevant to explain the impeaching fact. The rehabilitating facts must meet the impeachment with relative directness. The wall, attacked at one point, may not be fortified at another, distinct point.").

---

[1] As the Government has noted, "the prior consistent statement need not be proffered through the testimony of the declarant but may be proffered through any witness who has firsthand knowledge of the statement." *United States v. Caracappa*, 614 F.3d 30, 39 (2d Cir. 2010). However, "where the declarant has already testified and the prior consistent statement is proffered through the testimony of another witness, the Rule's 'subject to cross-examination' requirement is satisfied if the opposing party is not denied the opportunity to recall the declarant to the stand for cross-examination concerning the statement." *Id.*

The Second Circuit has been clear that prior consistent statements may not be offered "to rebut only a generalized attack on credibility" because in such circumstances, the prior statements have "no probative force beyond showing that the witness had at an earlier time been consistent with his trial testimony." *United States v. Pierre*, 781 F.2d 329, 333 (2d Cir. 1986) (citing *United States v. Quinto*, 781 F.2d 329 (2d Cir. 1978))[2]; *see Pierre*, 781 F.3d at 331 ("Of course, not every prior consistent statement has much force in rebutting the effect of a prior inconsistent statement, and the issue ought to be whether the particular consistent statement sought to be used has some rebutting force beyond the mere fact that the witness has repeated on a prior occasion a statement consistent with his trial testimony."); *see also United States v. Simonelli*, 237 F.3d 19, 28 (1st Cir. 2001) ("There is no rule admitting all prior consistent statements simply to bolster the credibility of a witness who has been impeached by particulars."); 1 McCormick On Evid. § 47 (7th ed.) ("When the attack takes the form of character impeachment by showing misconduct, convictions, or bad reputation, there is no justification for rehabilitating by consistent statements. The rehabilitation does not meet the attack and fails the response-in-kind rule of thumb." (internal footnote omitted)); 28 Fed. Prac. & Proc. Evid. § 6206 (2d ed.) ("[I]f a witness's character for truthfulness is called into question, evidence that the witness made prior statements consistent with her courtroom testimony should not be admissible to rehabilitate. This is because such

---

[2] Although *Pierre* was decided before the 2014 addition of subsection (ii) to Rule 801(d)(1)(B), the Committee Notes on the 2014 Amendment make clear that "[t]he amendment does not change the traditional and well-accepted limits on bringing prior consistent statements before the factfinder for credibility purposes. It does not allow impermissible bolstering of a witness. . . . The amendment does not make any consistent statement admissible that was not admissible previously—the only difference is that prior consistent statements otherwise admissible for rehabilitation are now admissible substantively as well."

statements logically do not refute evidence of untruthful character. Consistency and deceitfulness can coexist. Without such a logical connection to the theory of attack, the probative value of evidence supporting credibility would be insufficient to warrant its consideration.").

Where, on the other hand, a prior statement refutes a charge that the declarant recently fabricated his testimony or acted from recent improper influence or motive in testifying; "tends to cast doubt on whether the prior inconsistent statement was made or on whether the impeaching statement is really inconsistent with the trial testimony"; or where "the consistent statement will amplify or clarify the allegedly inconsistent statement," it may be properly admitted under Rule 801. *Pierre*, 781 F.2d at 333 (citing *United States v. Corry*, 183 F.2d 155 (2d Cir. 1950); *United States v. Rubin*, 609 F.2d 51 (2d Cir. 1979); *Applebaum v. Am. Export Isbrandtsen Lines*, 472 F.2d 56 (2d Cir. 1972)); *see also* 30B Fed. Prac. & Proc. Evid. § 7012 (2014 ed.) ("A prior consistent statement of the witness may be admitted without reference to Rule 801(d)(1)(B)(i) when relevant to rehabilitation in a manner other than refutation encompassed in Rule 801(d)(1)(B)(i) such as when the prior consistent statement serves to explain or modify a fragment thereof introduced by the opposite party for purposes of impeachment, or if it is otherwise related to or supportive of a denial or explanation offered in response to impeachment of a witness by an alleged self-contradiction, whether an inconsistent statement or a failure to speak when natural to do so, or to rebut a charge of faulty memory." (internal citations and footnotes omitted)).

**II.     Discussion**[3]

In the segment of the recording the Government claims to be admissible as a prior consistent statement, Mr. Owens told Mr. Frank that law enforcement had a witness who placed Mr. Owens at the scene of Anthony Parker's murder. Mr. Frank responded by asking, "They said they seen me and [Mr. Roye] too?"

The Government contends that this statement is admissible under either subsection (i) or subsection (ii) because the defense attacked Mr. Frank's credibility both in its opening statement and in its cross-examination of Mr. Frank by calling him a cold-blooded murderer and by emphasizing his cooperation agreement with the Government. (Mot. Recons. at 3–4.) The problem with this argument is two-fold. First, notwithstanding the Government's claim to the contrary (*see id.* at 4–5), the question "[the witness] said [they] [saw] me and [Mr. Roye] too?" is far from an

---

[3] Although "[n]either the Federal Rules of Criminal Procedure nor the Local Criminal Rules expressly provide for reconsiderations," it is permissible to file reconsideration motions in criminal cases and such motions are governed by the same standard applicable to the equivalent civil filing. *United States v. Reyes*, No. 3:10-CR-120 (VLB), 2013 WL 1882305, at *1 (D. Conn. May 3, 2013).

Motions for reconsideration require the movant to set "forth concisely the matters or controlling decisions which [the movant] believes the Court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c)(1). The Second Circuit has explained that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18B C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 4478). This standard is "strict," however, and reconsideration should be granted only if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). If "the moving party seeks solely to relitigate an issue already decided," the court should deny the motion for reconsideration and adhere to its prior decision. *Id.*

"oral assertion, written assertion, or nonverbal conduct . . . intended . . . as an assertion," Fed. R. Evid. 801(a), by Mr. Frank, particularly in the overall context of the recorded conversation, where Mr. Frank was debunking the merit or existence of what Mr. Owens reported as law enforcements' claimed evidence. To read Mr. Frank's question as a "statement" within the meaning of Rule 801(a) requires finding that in asking Mr. Owens whether the witness had said she had seen Mr. Frank and Mr. Roye, Mr. Frank was in fact asserting and intended to assert that he and Mr. Frank were present at the crime scene.[4] It is unlikely that reasonable people could find this requisite intention in Mr. Frank's question. Further, even if this equivocal utterance could be deemed a "statement," it lacks sufficient rebutting force to defense counsel's challenge to Mr. Frank's credibility and character for truthfulness to be properly admitted under Rule 801(d)(1)(B), and it appears to be no more than an impermissible attempt to bolster Mr. Frank's credibility.

As such, and because the Government has pointed to no controlling caselaw to the contrary, the Court declines to reconsider its prior ruling. The proffered evidence is not admissible.

### III. Conclusion

For the foregoing reasons, the Government's Motion [Doc. # 181] for Reconsideration is DENIED.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 4th day of August, 2016.

---

[4] The Government goes even further, arguing that this question should be understood as an assertion that not only were both Mr. Frank and Mr. Roye present but they were both involved in the murder. (*See* Mot. Recons. at 4–5.)